# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO. 5:20-CV-188-DCK

| | |
|---|---|
| CATHERINE L. SEXTON, | ) |
| Plaintiff, | ) |
| | ) **ORDER** |
| v. | ) |
| KILOLO KIJAKAZI[1], | ) |
| Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion For Summary Judgment" (Document No. 12) and Defendant's "Motion For Summary Judgment" (Document No. 17). The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and these motions are ripe for disposition. After careful consideration of the written arguments, the administrative record, and applicable authority, the undersigned will direct that Plaintiff's "Motion For Summary Judgment" be denied; that Defendant's "Motion For Summary Judgment" be denied; that the Commissioner's decision be vacated; and that this matter be remanded for further consideration.

## I. BACKGROUND

Plaintiff Catherine Lane Sexton ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on her application for disability benefits. (Document No. 1). On or about November 16, 2016, Plaintiff filed an application for supplemental security income

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew M. Saul as Defendant in this action.

under Title XVI of the Social Security Act, 42 U.S.C. § 1383, alleging an inability to work due to a disabling condition beginning November 1, 2003. (Transcript of the Record of Proceedings ("Tr.") 10). The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's application initially on October 25, 2017, and again after reconsideration on March 27, 2018. (Tr. 10). In its "Notice of Reconsideration," the Social Security Administration ("SSA") included the following explanation of its decision:

> The medical evidence shows that your condition is not severe enough to be considered disabling. We realize that your condition keeps you from doing some types of work, but it does not keep you from doing less demanding work. Based on your age, education, and past work experience, you can do other work. It has been decided, therefore, that you are not disabled according to the Social Security Act.

(Tr. 133).

Plaintiff filed a timely written request for a hearing on May 20, 2018. (Tr. 10, 138). On January 29, 2020, Plaintiff appeared and testified at a hearing before the Administrative Law Judge (the "ALJ"). (Tr.10, 36-91). In addition, Nicholas Fidanza, a vocational expert ("VE"), and Daniel S. Johnson, Plaintiff's attorney, appeared at the hearing. (Tr. 10).

The ALJ issued an unfavorable decision on February 11, 2020, denying Plaintiff's claim. (Tr.7-23). On March 27, 2020, Plaintiff filed a request for review of the ALJ's decision, which was denied by the Appeals Council on October 8, 2020. (Tr. 1). The ALJ decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 1).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on November 27, 2020. (Document No. 1). On July 20, 2021, the undersigned was assigned to this case as the referral Magistrate Judge. The parties consented to Magistrate Judge jurisdiction

on July 20, 2021, and this case was reassigned to the undersigned as presiding judge.  (Document No. 14).

"Plaintiff's Motion For Summary Judgment" (Document No. 12) and "Plaintiff's Memorandum In Support Of Plaintiff's Motion For Summary Judgment" (Document No. 13) were filed July 7, 2021;  and the "Commissioner's Motion For Summary Judgment On The Pleadings, And In Response To Plaintiff's Memorandum" (Document No. 17) and "Memorandum In Support Of The Commissioner's Motion For Summary Judgment On The Pleadings, And In Response To Plaintiff's Memorandum" (Document No. 18) were filed October 7, 2021.  Plaintiff declined to file a reply brief, and the time to do so has lapsed.  See Local Rule 7.2 (e).

The pending motions are now ripe for review and disposition.

## II.      STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to:  (1) whether substantial evidence supports the Commissioner's decision;  and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971);  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence.  Hays, 907 F.2d at 1456 (4th Cir. 1990);  see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986);  Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established.  It means such relevant evidence as

3

a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between November 16, 2016, and the date of the ALJ decision.[2] (Tr. 11). To establish entitlement to benefits, Plaintiff has the burden of proving disability within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

(1) whether claimant is engaged in substantial gainful activity -
if yes, not disabled;

---

[2] Under the Social Security Act, 42 U.S.C. § 301, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

(4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and

(5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v).

The burden of production and proof rests with the claimant during the first four steps; if claimant is able to carry this burden, then the burden shifts to the Commissioner at the fifth step to show that work the claimant could perform is available in the national economy. Pass, 65 F.3d at 1203. In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 22).

First, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since November 16, 2016, the alleged disability onset date. (Tr. 12). At the second step, the ALJ found that fibromyalgia, Sjogren's syndrome, postural orthostatic tachycardia syndrome (POTS), vasovagal syncope, dysthymic disorder, somatic disorder, anxiety, depression, and remote cognitive disorder due to closed head injury were severe impairments.[3] (Tr. 13). At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that

---

[3] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

5

met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 13).

Next, the ALJ assessed Plaintiff's RFC and found that she retained the capacity to perform sedentary work activity, with the following limitations:

> Lift/carry 10 pounds occasionally and 5 pounds frequently; sit for six hours in an eight hour workday; stand and/or walk for two hours in an eight hour workday; no operation of foot controls; occasional climbing of ramps or stairs; no climbing of ladders; occasional balancing, stooping, kneeling, and crouching; no crawling; frequent handling and fingering; must avoid concentrated exposure to extreme cold, extreme heat, wetness, and humidity; no exposure to very loud noise as defined by SCO code; no exposure to extreme bright lighting like stage lights, headlights and bright inspection lights, but normal office and home lighting is acceptable; no exposure to hazardous machinery; frequent peripheral acuity; able to understand, remember, and carryout simple tasks; low stress work defined as only occasional decision-making and only occasional changes in the work setting, and occasional interaction with coworkers, supervisors, and the public.

(Tr. 15). In making this finding, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR 16-3p." Id.

At the fourth step, the ALJ recognized that Plaintiff had no past relevant work to be considered. (Tr. 21). At the fifth and final step, the ALJ concluded based on the testimony of the VE and "considering the claimant's age, education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 22). Specifically, the VE testified that according to the factors given by the ALJ, occupations claimant could perform included a table worker, a final assembler, and a semiconductor bonder. (Tr. 22). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social

Security Act, at any time between November 16, 2016, and the date of his decision, February 11, 2020. (Tr. 22-23).

Plaintiff on appeal to this Court makes the following assignments of error: (1) the ALJ did not assign appropriate weight to the opinions of Plaintiff's medical providers; and (2) the ALJ erred in finding that Plaintiff has the residual functional capacity to perform sedentary work. (Document No. 13, p. 2). The undersigned will only discuss part of Plaintiff's first assignment of error, which provides a basis for the undersigned's conclusion that the case should be remanded for the reasons that follow.

**A.      Medical Opinions**

In the first assignment of error, Plaintiff argues that the ALJ "erred in discounting the opinions of Plaintiff's medical providers." (Document No. 13, p. 3). Plaintiff contends that the ALJ erred in his decision to accord "little weight" to (1) the opinion of Dr. James Logan, Plaintiff's primary treating physician; (2) Plaintiff's medical providers at Duke University Medical Center; and (3) the neuropsychological evaluation performed by Carolinas Rehabilitation "a few years after… Plaintiff's traumatic brain injury" Id. at pp. 4-5. According to Plaintiff, when assigning little weight to the medical opinions in this case, "the ALJ simply made conclusory statements regarding the opinion evidence and in doing so failed to comply with Social Security regulations and law." Id. p. 8. The opinion evidence in this case, Plaintiff argues, "provided the basis for a fully favorable decision as each piece of evidence was supported by Plaintiff's medical treatment." Id. Plaintiff continues that the ALJ erred in failing to give these medical opinions appropriate weight and by "discounting these opinions in favor of his own." Id. at p. 9.

In response, Defendant argues that the ALJ "properly evaluated the opinion evidence and accorded the opinions the proper weight." (Document No. 18, p. 5). Defendant contends that "the

7

ALJ properly explained why he did not give greater weight to these opinions and included the factors other than length of treatment relationship." Id. at p. 9. Though the regulations list several factors that must be considered when evaluating opinion evidence, Defendant continues, "it is well-established that an explicit discussion of each factor is not required." Id. (citing Lyde v. Saul, 2019 WL 4491503, at *4 (E.D.N.C. Sept. 18, 2019)). Defendant asserts that while Plaintiff may disagree with "the persuasiveness of the ALJ's reasons," the Court need only determine whether "the ALJ's findings are supported by more than a mere scintilla of evidence." Id. (citing Biestek v. Berryhill, 139 S.Ct. 1148, 203 L.Ed 2d 504 (2019)). Here, Defendant concludes, "the ALJ's decision clearly meets this standard." Id.

The undersigned will only focus on the ALJ's treatment of Dr. James Logan's opinion.

**1. Dr. James Logan**

According to Plaintiff, the ALJ erroneously gave "little weight" to the opinion of her treating physician, Dr. Logan. (Document No. 13, p. 5). Dr. Logan has been Plaintiff's primary treating physician for fibromyalgia and Sjogren's syndrome since 2015. (Document No. 13, p. 5). Over the course of their patient-doctor relationship, Plaintiff asserts that Dr. Logan has (1) "consistently documented" Plaintiff suffering from fatigue and pain due to her fibromyalgia (Tr. 425); (2) reported in 2017 that Plaintiff had an "increase in stiffness and pain affecting her hands, wrists, and her feet and that she had morning stiffness lasting over forty minutes" (Tr. 618); (3) noted in 2019 that Plaintiff "had an increase in fatigue and pain and cramping which occurred when she was sitting and walking" (Tr. 861); and (4) prescribed "numerous medications for the Plaintiff" and recommended that she "participate in an exercise program" (Tr. 291-93, 396). Id. On July 17, 2017, Dr. Logan provided a letter noting several physical limitations Plaintiff has. Id. (citing Tr. 609). In her own words, Plaintiff summarized several of those limitations as follows:

> The Plaintiff suffers from Sjogran's syndrome and secondary fibromyalgia syndrome; she has chronic sicca symptoms which cause the Plaintiff problems with visual acuity as well as issues with photosensitivity; she has Sjogren's associated neuropathy with parethesia affecting hands and feet decreasing dexterity; she has significant muscle atrophy and poor exercise tolerance; she lives at home with her parents because she requires assistance with some of her physical activity; she is unable to live independently because of severe fatigue and musculoskeletal pain related to her diagnoses of Sjogren's syndrome and fibromyalgia; she had been unable to continue her education because of physical disability and also due to issues with fatigue and memory loss and difficulty with concentration; [Dr. Logan] believed that she would have difficulty with employment that would require a great deal of physical exertion or repetitive activities.

Id. (citing Tr. 609).

Plaintiff alleges that the ALJ erred in weighing Dr. Logan's opinion in two ways. First, Plaintiff claims that because Dr. Logan is Plaintiff's "primary treating physician," his opinion "should have been afforded controlling weight with respect to her rheumatological conditions and her limitations resulting from the same." Id. at p. 6. Plaintiff argues that by "disregarding Dr. Logan's opinions, the ALJ did not evaluate any of Dr. Logan's physical findings concerning the Plaintiff but instead, and for reasons that are completely unclear, discussed issues pertaining to the Plaintiff's psychiatric conditions." Id. Second, even if not assigned controlling weight, Plaintiff contends, Dr. Logan's findings "should have been given significant weight and adopted." Id. When a medical opinion is not given controlling weight, the ALJ must determine what weight to give it by considering the six factors required by the regulations. Dowling v. Comm'r of SSA, 986 F.3d 377, 385 (2021). The ALJ's failure to do so, Plaintiff asserts, "constitutes legal error." (Document No. 13, p. 6). Indeed, Plaintiff continues, "[t]here is no indication that the ALJ considered any of these factors in addressing Dr. Logan's opinion." Id.

In response, Defendant recognizes that Dr. Logan opined as to Plaintiff's memory loss, difficulty while concentrating, and difficulty with physically intense employment. (Document No. 18, p. 5) (citing Tr. 20, 609, 731). However, Defendant contends that the ALJ's decision notes that Dr. Logan's opinion is inconsistent with Dr. Logan's own treatment notes, "which routinely reflect Plaintiff denying problems with memory loss and confusion." Id. (citing Tr. 20, 473, 654, 834, 864). Defendant asserts the ALJ notes "that Dr. Logan's psychiatric examinations have also routinely shown… Plaintiff to have a normal attention span and concentration." Id. at pp. 5-6 (citing Tr. 20, 441, 461, 476). Further, Defendant argues, Dr. Logan's opinion is inconsistent with the records from NC Neuropsychiatry, which "[does] not reflect that Plaintiff has any significant cognitive deficiencies and she was able to track complex conversations." Id. at p. 6 (citing Tr. 20, 491, 700, 741, 744). Similarly, Defendant argues that Dr. Logan's opinion was inconsistent with "numerous physical examinations from other providers that have generally been normal or show only mild findings." Id. (citing Tr. 687, 910-11, 917, 922-23).

Defendant disagrees with Plaintiff's assertion that the ALJ disregards Dr. Logan's opinion and instead asserts that "[t]he ALJ properly evaluated the treatment records of Dr. Logan… and properly found that his treatment notes were inconsistent with his opinion." Id. (citing Tr. 17-20). Thus, Defendant concludes, the ALJ's decision is supported by substantial evidence. Id. at p. 6.

The undersigned finds that while the ALJ may have been correct to accord "little weight" to Dr. Logan's opinion regarding Plaintiff's mental limitations, he erred in according this same weight regarding Plaintiff's physical limitations. For claims filed before March 27, 2017, the Fourth Circuit follows the treating physician rule, "which requires that ALJs give controlling weight to a treating physician's opinion on the nature and severity of the impairment if that opinion is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2)

not inconsistent with other substantial evidence in the record." Triplett v. Saul, 860 F. App'x 855, 863 (4th Cir. 2021) (internal quotations and citations omitted). The Court has emphasized that the "treating physician rule is a robust one… and may be disregarded only if there is persuasive contradictory evidence." Arakas v. Comm'r, Soc. Sec., 983 F.3d 83, 107 (4th Cir. 2021).

Conversely, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Id. Should a physician's opinion not meet the requirements of the treating physician rule, the ALJ must consider each of the following factors to determine the weight the opinion should be afforded: (1) "the length of the treatment relationship and the frequency of examination;" (2) "the nature and extent of the treatment relationship;" (3) "supportability" or "the extent to which the treating physician presents relevant evidence to support the medical opinion;" (4) "consistency" of the opinion "with the evidence of the record;" (5) "the extent to which the treating physician is a specialist opining as to issues related to his or her area of specialty;" and (6) any other factors that "tend to support or contradict the medical opinion." Dowling, 986 F.3d at 384-85 (citing 20 C.F.R. § 404.1527(c)(2)(i)-(6)). In Dowling, the Court found that the ALJ erred in his weighing of a treating physician's opinion because it only addressed the "consistency" and "supportability" factors with no mention of the remaining four. Id. While the ALJ is not "required to set forth a detailed factor-by-factor analysis in order to discount a medical opinion… it must nonetheless be apparent from the ALJ's decision that he meaningfully considered *each* of the factors before deciding how much weight to give the opinion." Id. at 385.

When fibromyalgia is the impairment at issue, "objective indicators [other than trigger point findings] such as normal clinical and laboratory results simply have no relevance to the severity, persistence, or limiting effects of claimant's fibromyalgia, based on current medical

understanding of the disease." Arakas, 983 F.3d 83 at 107. To evaluate otherwise is a "pervasive misunderstanding" of fibromyalgia. Id. at 97 (internal citations omitted). It follows that "ALJs may not rely on objective medical evidence (or lack thereof)—even as just one of multiple factors—to discount… symptoms of fibromyalgia." Id.

In Arakas, the court notes that the record contained "ample evidence of consistent trigger-point findings," however, the ALJ did not give the treating physician's opinion controlling weight. 983 F.3d 83, 106 (internal citations and quotations omitted). The Fourth Circuit found that the ALJ's disregard of the treating physician's opinion because of "a lack of support from objective medical evidence…reveals [the ALJ's] misunderstanding of fibromyalgia, which does not produce such evidence other than trigger points." Id. The Court found that the ALJ should have given the treating physician's opinion controlling weight. Id. The treating physician "diagnosed [the claimant's] fibromyalgia based on consistent findings of diffuse trigger points…[t]hus his opinion was well-supported by the clinical and laboratory diagnostic techniques… to establish the existence and severity of fibromyalgia." Id. (internal citations and quotations omitted).

In this case, the ALJ "reasoned that the lack of substantial support from the other objective evidence of record" justified his award of "little weight" to Dr. Logan's opinion. See Arakas, 983 F.3d 83, 106. However, "the law makes it clear that such support is not necessary for according controlling or great weight to a treating physician's opinion." Id. The ALJ's use of objective medical evidence, namely "numerous physical examinations… from other providers," is inappropriate to discount Dr. Logan's opinion as it "simply ha[s] no relevance to the severity, persistence, or limiting effects" of fibromyalgia based on current medical understanding. See id. at 96. At multiple points in his opinion, the ALJ noted Dr. Logan's consistent findings of "tender points" in Plaintiff's physical examinations. (Tr. 17-18). Thus, Dr. Logan's opinion is "well-

12

Case 5:20-cv-00188-DCK   Document 19   Filed 07/28/22   Page 12 of 13

supported… to establish the existence and severity of fibromyalgia." See Arakas, 983 F.3d 83, 106. Like the treating physician's opinion in Arakas and due to the "unique nature" of fibromyalgia, Dr. Logan's opinion regarding Plaintiff's physical limitations was not based on "medically unacceptable clinical or laboratory diagnostic techniques" nor was it "*contradicted* by other substantial evidence on the record." Arakas, 983 F.3d 83, 106. Thus, the ALJ according "little weight" to Dr. Logan's opinion constitutes legal error and requires remand.

## IV. CONCLUSION

Based on the analysis above and in consideration of the Fourth Circuit's recent decision in Arakas, the undersigned finds this matter should be remanded for further consideration. The undersigned finds that there is not "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence does not support the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will direct that the Commissioner's decision be vacated.

**IT IS, THEREFORE, ORDERED** that: Plaintiff's "Motion For Summary Judgment" (Document No. 12) is **DENIED**; the "Defendant's Motion For Summary Judgment" (Document No. 17) is **DENIED**; and the Commissioner's determination is **VACATED**. This matter shall be **REMANDED** for reconsideration consistent with this order.

**SO ORDERED**.

Signed: July 28, 2022

David C. Keesler
United States Magistrate Judge